1  JOSEPH P. RUSSONIELLO (CSBN 44332)
   United States Attorney
2
   BRIAN J. STRETCH (CSBN 163973)
3  Chief, Criminal Division

4  ELISE BECKER (NYSBN 2540730)
   GRANT P. FONDO (CSBN 181530)
5  Assistant United States Attorneys

6     450 Golden Gate Avenue
      San Francisco, California  94102
7     Telephone: (415) 436-7200
      Facsimile: (415) 436-7234
8     Emails: elise.becker@usdoj.gov
             grant.fondo@usdoj.gov
9
   Attorneys for the Plaintiff
10

11              UNITED STATES DISTRICT COURT

12             NORTHERN DISTRICT OF CALIFORNIA

13                  SAN JOSE DIVISION

14

15  UNITED STATES OF AMERICA        )   CR 09-263 RMW
                                    )
16        Plaintiff,                )   UNITED STATES' OPPOSITION
                                    )   TO MOTIONS TO SUPPRESS
17     v.                           )
                                    )
18  JOSEPH BUDDENBERG,              )   Date:  June 7, 2010
    MARYAM KHAJAVI,                 )   Time:  9:00 a.m.
19  NATHAN POPE, A/K/A NATHAN KNOERL, )   Court: Hon. R. Whyte
    ADRIANA STUMPO,                 )
20                                  )
                                    )
21        Defendants.               )
    _____)

22                     **INTRODUCTION**

23        Defendants move to suppress evidence seized pursuant to a state search warrant executed on

24  February 24, 2008 (Docket Entries 135, 144, and 145), and evidence seized pursuant to a federal

25  search warrant executed on August 8, 2008 (Docket Entry 143).  For the reasons discussed

26  below, defendants' motions to suppress bandanas, a bullhorn, and a piece of paper and envelope

27  containing the names of professors at the University of California at Santa Cruz seized on

28  February 24, 2008, from defendant Khajavi's car and her shared residence should be denied.  At

U.S. OPPOSITION TO MOTIONS TO SUPPRESS
CR 09-263 RMW

1   this time, the government does not intend on offering into evidence in its case in chief any other

2   evidence seized on February 24, 2008, or any evidence seized pursuant to the August 8, 2008,

3   search warrant.  Therefore, the Court need not decide the defendants' motions to suppress

4   evidence from the August 2008 search.  Defendant Buddenberg also moves to suppress evidence

5   seized on October 24, 2007, March 30, 2008, and December 18, 2008 (Docket Entry 125).  His

6   motion should be denied with respect to the March 30, 2008, and December 18, 2008, searches.

7   At this time, the government does not intend to offer into evidence in its case in chief any items

8   seized from Buddenberg on October 24, 2007.  Therefore, the Court need not decide that motion

9   either.  The government will promptly notify the Court and the parties if the scope of its

10  anticipated trial evidence changes so that the remaining issues raised by the defendants with

11  respect to these searches can be litigated.

12                                    **ARGUMENT**

13  **I. Evidence From the February 24, 2008, State Search Warrant**

14      A.   <u>The underlying criminal activity</u>

15      In substance, the affidavit alleges that on February 24, 2008, at approximately 12:37 p.m., a

16  victim reported to law enforcement that five to six masked animal rights activists had attempted

17  to enter his residence in Santa Cruz.  Law enforcement responded to a 911 call with a woman

18  screaming and children crying in the background.  When law enforcement arrived at the address,

19  the victim reported that he saw the individuals after his doorbell rang and there was a loud knock

20  at the door.  The individuals were standing on his front porch, dressed in all black.  After warning

21  his wife and children to stay in the back of the house, the victim heard the individuals banging

22  violently on the glass pane of his front door, twisting the door handle, and shoving the door in its

23  frame.  The victim opened the front door, told the individuals to leave, and then had a physical

24  altercation with one of the individuals.  The victim also reported that an individual yelled of "go

25  back to your murdering wife," and "we're gonna get you."  The victim then followed the five to

26  six masked individuals on foot as they fled from his house.  Three to four of the individuals

27  entered a white Chevy four-door bearing California license plate number 5LEH590.  Those

28

U.S. OPPOSITION TO MOTIONS TO SUPPRESS
CR 09-263 RMW                    2

1  individuals then picked up the other two individuals a few blocks away.  At that point, the victim

2  lost sight of the car.  *See* Declaration of Elise Becker, Exh. 3.

3      B.  Evidence seized from 724 Riverside, Santa Cruz, California

4      The defendants argue that the February 24, 2008, search warrant of Khajavi, Pope, and

5  Stumpo's residence was not based on probable cause, was overbroad, and lacking in particularity.

6  The defendants' motions to suppress evidence seized as a result of this search should be denied

7  because the affidavit set forth sufficient facts for the issuing court to find probable cause that

8  evidence relating to trespass, assault, and unlawful animal rights activities committed at the

9  home of a University of California at Santa Cruz professor hours before the execution of a state

10  search warrant would be found at Khajavi's residence.  At this time, the government only intends

11  to offer into evidence in its case in chief the following items: one bandana recovered from a

12  backpack in a common area; one bandana recovered from an uncharged roommate's room; and a

13  letter and envelope bearing the names and addresses of bio-medical researchers- including some

14  previously targeted by animal rights protests- that was found in the same backpack as the

15  bandana located in the common area.  Therefore, the government submits that the Court need not

16  decide whether or not there was probable cause to search Nathan Pope's room, or to seize

17  computers, telephones, books, or any of the other items challenged by the defendants.

18      The issuing court properly determined that there was probable cause to search Khajavi's

19  residence.  "The affidavit need only 'enable the magistrate to conclude that it would be

20  reasonable to seek the evidence in the place indicated by the affidavit.'" *United States v. Taylor*,

21  716 F.2d 701, 706 (9th Cir. 1983) (quoting *United States v. Hendershot*, 614 F.2d 648, 654 (9th

22  Cir. 1980)).  That determination should be reviewed "in a common sense and realistic fashion."

23  *United States v. Dubrofsky*, 581 F.2d 208, 212 (9th Cir. 1978).  A warrant will be upheld even

24  when there is no direct evidence that the items to be seized are at the location.  Indeed, "a warrant

25  may be upheld when the nexus between the items to be seized and the place to be searched rests

26  not upon direct observation, but on the type of crime, nature of the items, and normal inferences

27  where a criminal would likely hide contraband." *Id.* at 213.  *See also United States v. Hargus*,

28  128 F.3d 1358, 1362 (10th Cir. 1997) (no direct evidence or personal knowledge required to

establish probable cause to believe items sought are at search location); *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986).  Furthermore, a search warrant for the entire residence was appropriate based on the number of individuals involved in the incident, the three names on the unit's mailbox, the nature of the items to be seized, and the nature of the unlawful acts.  *See United States v. Ayers*, 924 F.2d 1468, 1480 (9th Cir. 1991) (search of entire single family home appropriate notwithstanding information regarding illegal activities of only one occupant).

In this case, the affidavit sets forth sufficient facts supporting probable cause to believe that evidence of trespass, assault, and unlawful animal rights activities would be found at Khajavi's residence.  The police traced the car's license plate to its registered owner, Khajavi's mother.  Khajavi's mother told the police that her daughter had the car, that she was a student at University of California at Santa Cruz, and that she recently moved to 724 Riverside in Santa Cruz.  The affiant also confirmed Khajavi's residence by looking at the names on the unit's mailbox and speaking with Khajavi's landlord, both of which evidenced that Khajavi lived at the residence with at least one other individual.  Furthermore, the affiant, who states that he has investigated hundreds of cases involving crimes against persons and property, believed that evidence would likely be found at Khajavi's residence.  Based on all these facts, the issuing court properly found probable cause to believe that evidence of the crimes on February 24, 2008, would be found at 724 Riverside.  The affiant needed neither personal knowledge nor direct evidence that the items would be found at the residence; as set forth above, the issuing court had authority to make the probable cause determination based on reasonable inferences from the totality of circumstances in the affidavit.  *See United States v. Seybold*, 726 F.2d 502, 504 (9th Cir. 1984) (application of totality of the circumstances test); s*ee also United States v. Barros*, 340 Fed. Appx. 509 (C.A. 10 (N.M.), 2009) (unpublished) (probable cause to search residence of pizza store robber based on eyewitness description of suspect matching defendant's physical description seen fleeing robbery in car similar to defendant's car and license plate of car registered to defendant).  Under the totality of the circumstances test, here, the issuing court properly exercised its discretion in finding probable cause to search Khajavi's residence.

1    The only items the government seeks to admit in its case in chief are the bandanas and paper

2    and envelope with the names of University of California at Santa Cruz researchers seized from a

3    common area and the roommate's bedroom.   These items were lawfully seized under the warrant.

4    Indeed, the search warrant was neither overbroad nor lacking in particularity with respect to the

5    seizure of "masks, bandanas, disguises, dark clothing, bullhorn, collapsible umbrella and chalk."

6    These items are narrowly defined, and are directly related to the incident under investigation.

7    The defendants do not challenge this particular section of the warrant, and these items should not

8    be suppressed.

9    The search warrant also allowed the seizure of "rosters or lists of University of Santa Cruz

10   California faculty members who they inten[d] to target."   The affidavit provides a detailed

11   description of four incidents committed in the name of animal rights against three different

12   University of California at Santa Cruz faculty members.   Three of those incidents occurred on

13   February 10, 2008, and the fourth occurred on February 24, 2008.   The victim of the February

14   24, 2008, incident was also a victim in a February 10, 2008, incident.   The first three incidents

15   were similar in nature; they all involved chalkings of "Murderer," "Animal Abuser," and other

16   words of a similar nature.   The February 24, 2008, incident involved the physical confrontation

17   with one of the faculty member's husband, and the yelling of "go back to your murdering wife,"

18   and "we're gonna get you."   Based on the three similar incidents on February 10, 2008, and the

19   physical confrontation on February 24, 2008, there was probable cause to believe that evidence

20   relating to past and future targets of animal rights protests against University of California Santa

21   Cruz faculty members would be found in the getaway car and in the residence of the driver of the

22   getaway car.   While the warrant does not limit the collection of this evidence to a specific time

23   period, any evidence of past or contemplated acts against the researchers would "aid in the

24   particular apprehension or conviction" relating to unlawful acts committed against the faculty

25   members.   *Warden v. Hayden*, 387 U.S. 294, 307 (1967).

26   Based on all these facts, law enforcement also had a good faith basis to rely on the search

27   warrant.   *See United States v. Crews,* 502 F.3d 1130, 1135-39 (9th Cir. 2007) (evidence not

28   suppressed based on officers' good faith reliance on search warrant affidavit which was neither

1    misleading nor "so lacking in indicia of probable cause as to render reliance upon it objectively

2    unreasonable."). Furthermore, if the Court finds that sections of the warrant on which the

3    government does not rely are overbroad, it should not invalidate the entire warrant. *See United*

4    *States v. Clark*, 31 F.3d 831, 836 (9th Cir. 1994) ("The remedy for an overbroad search warrant

5    is suppression of the seized evidence. The court need suppress, however, only those items seized

6    pursuant to the invalid portion of a search warrant."). *See also United States v. Washington*, 797

7    F.2d 1461, 1473 (9th Cir. 1986) ("Any articles seized pursuant to valid portions of the warrant

8    need not be suppressed.").

9        C.   Evidence seized from defendant Khajavi's car

10       The defendants' motion to suppress evidence seized from Khajavi's car pursuant to the

11   search warrant should also be denied. The officers did not need a search warrant to search

12   Khajavi's car. Under the automobile exception to the Fourth Amendment, officers can search a

13   car without a warrant if there is probable cause to believe it contains evidence of criminal

14   activity. *United States v. Ross*, 456 U.S. 798, 825 (1982). As set forth above, the victim reported

15   to law enforcement that he followed five to six masked individuals fleeing from his house in a

16   white Chevy four-door bearing license plate number 5LEH590. Based on this information, there

17   was probable cause to believe that evidence of the incident would be found in the car seen fleeing

18   the scene. While law enforcement did not need a search warrant to search the car, here, they

19   obtained one before the car was even located. As a result of the search, four bandanas and a

20   bullhorn were recovered from the car.

21       D.   Defendant Khajavi's identity

22       Khajavi also moves to suppress her identity as a result of law enforcement's initial encounter

23   with her before they obtained the search warrant for 724 Riverside. As set forth in the affidavit,

24   law enforcement attempted to locate Khajavi at 724 Riverside before they sought a search

25   warrant. Law enforcement first knocked on the door of the residence; there was no response.

26   Law enforcement went to a side door of the residence and knocked again; there was no response.

27   Law enforcement then tried the door and discovered that the door was unlocked. Law

28   enforcement pushed on the door knob, causing the door to open slightly. The affiant announced

his presence in a loud voice.  At this time a white female with brown hair in dreadlocks, not identified as Khajavi in the affidavit, walked towards the door; she told affiant to get a search warrant, and she closed the door.  At this point of the investigation, law enforcement knew from Khajavi's mother that Khajavi resided at 724 Riverside, but they had not yet obtained a search warrant for her residence.

The Court need not decide the issue of the legality of this initial encounter because the Supreme Court has held that one's identity cannot be suppressed.  *See United States v. Ortiz-Hernandez*, 427 F.3d 567, 577 (9th Cir. 2005) (quoting *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984)).  Furthermore, the affidavit does not identify the slender female with dreadlocks as Khajavi, and nothing in the affidavit relies on Khajavi's physical presence at the location to establish probable cause that she resided at the location.  That the affidavit mentions an initial encounter with a woman, whom law enforcement later identified as Khajavi after obtaining the search warrant, does not taint either the warrant or the evidence.  *See United States v. Vasey*, 834 F.2d 782, 788 (9th Cir. 1987) ("The mere inclusion of tainted evidence in an affidavit does not, by itself, taint the warrant or the evidence seized pursuant to the warrant.  A reviewing court should excise the tainted evidence and determine whether the remaining, untainted evidence would provide a neutral magistrate with probable cause to issue a warrant." (internal citations omitted)).  Accordingly, the fact that Khajavi was present at the residence at the time of the execution of the search warrant should not be suppressed.

## II. Defendant Buddenberg's Motion to Suppress

A. Evidence from October 24, 2007

Defendant Buddenberg moves to suppress evidence seized on October 24, 2007.  On that date, law enforcement received information from a bio-medical researcher at the University of California at Berkeley that an individual reported to her that a man was posting flyers in the Downtown Berkeley area containing personal information relating to the professor.  Law enforcement contacted the person reporting the incident, and proceeded to the location of the flyers. An individual then approached law enforcement and pointed out Buddenberg who was half a block away.  This individual indicated that he was willing to make a citizen's arrest of

1   Buddenberg for posting the flyers.  Law enforcement approached Buddenberg and searched his

2   bag.  The individual who initially indicated that he would make a citizen's arrest then changed

3   his mind, and law enforcement did not arrest Buddenberg.  *See* Declaration of Elise Becker, Exh.

4   4.  At this time, the government does not intend to offer into evidence in its case in chief any

5   items seized from Buddenberg on October 24, 2007.

6       B.  Evidence from March 30, 2008

7       Defendant Buddenberg also moves to suppress evidence from an incident on March 23, 2008.

8   Based on the defendant's arguments, it appears that the defendant meant to challenge a car

9   inventory search that occurred on March 30, 2008.  On that date, the defendant was observed

10  driving a vehicle registered to another person.  Law enforcement, who was familiar with

11  Buddenberg from previous encounters and knew him to be involved in home demonstrations,

12  knew that Buddenberg did not have a valid driver's license at the time.  Law enforcement also

13  recognized the car as being used in animal rights activities.  Law enforcement stopped the car in

14  furtherance of its investigation into an act of vandalism that had just occurred at a University of

15  California at Berkeley bio-medical faculty member's home nearby.  Law enforcement issued

16  Buddenberg a citation for violations of California Vehicle Code Section 12500 (driving without a

17  valid driver's license), Section 16028a (driving without valid registration), and Section 22651(p).

18  Since the car's registered owner was not present, the car was impounded pursuant to California

19  Vehicle Code Section 22651(p) and the car was searched pursuant to Berkeley Police

20  Department's tow policy.  *See* Declaration of Elise Becker, Exh. 5.  During an inventory search

21  of the car, law enforcement found the following items: "stop Vivisection" signs, a mega-phone,

22  and typed fliers relating to University of California at Berkeley bio-medical researcher Jack

23  Gallant.  The Supreme Court has unequivocally held that inventory searches of cars prior to and

24  subsequent to impoundment are lawful searches that do not require search warrants.  *See*

25  *Colorado v. Bertine*, 479 U.S. 367 (1987) (warrantless inventory search prior to lawful

26  impoundment) and *South Dakota v. Opperman*, 428 U.S. 364 (1976) (warrantless inventory

27  search after lawful impoundment).  Accordingly, defendant Buddenberg's motion to suppress the

28  evidence seized from the car pursuant to a lawful inventory search should be denied.

U.S. OPPOSITION TO MOTIONS TO SUPPRESS

C. Evidence from December 18, 2008

Lastly, defendant Buddenberg moves to suppress evidence seized on December 18, 2008, incident to his arrest on a warrant issued in connection with a trespassing violation that occurred on July 4, 2008.  On July 10, 2008, a victim reported to law enforcement that an individual had trespassed on her property at approximately 10:30 p.m. on July 4, 2008, and that she had video surveillance footage of the trespass.  The victim, whose husband is a bio-medical associate professor at the University of California at Berkeley, stated that she recognized the person trespassing from past animal rights incidents at her home, stating he was "possibly Buddenberg." Law enforcement reviewed the video footage and determined that Buddenberg had trespassed on the victim's private property on July 4, 2008, by entering her driveway.  Law enforcement observed a "No Trespassing/Private Property" sign posted on a utility box at the entrance to the victim's driveway.  Law enforcement also recognized Buddenberg from prior animal rights activities.  Entering property on which the owner has posted a no trespassing sign is unlawful under Berkeley Municipal Code 13.52.010 and California Penal Code 647(h).  Based on these facts, law enforcement sought an arrest warrant for Buddenberg.  On December 18, 2008, law enforcement saw Buddenberg at a park, ran a records check, and arrested him on the outstanding warrant.  Buddenberg had a backpack on his person at the time of arrest.  After Buddenberg was transported to Berkeley jail, the arresting officer searched his bag and seized various items, including a bicycle lock, a knit hat, tubes of super glue, gloves, papers, a photocopied UC Berkeley ID card, and a photocopied UC Santa Cruz ID card.  *See* Declaration of Elise Becker, Exh. 6.  Buddenberg's backpack was searched at the jail, as part of the routine booking process. The arresting officer seized the contents of the backpack as evidence.  The jail's booking process as it relates to searches of a prisoner's property and the seizure of property as evidence is also attached to the Declaration of Elise Becker at Exhibit 6.  The evidence seized from this search, which was conducted after Buddenberg's arrest and after he was transported to the jail, was and would inevitably have been inventoried at the jail.  The Supreme Court held in *Illinois v. Lafayette* that a routine inventory search during the booking process is an exception to the warrant requirement.  462 U.S. 640, 648 (1983).  Evidence that would have been discovered

during a valid inventory search is also admissible. *See United States v. Andrade*, 784 F.2d 1431, 1433 (9th Cir. 1986) (drugs found in garment bag searched about an hour after arrest but before booking process admissible under inevitable discovery doctrine because inventory of bag during routine booking procedure would have resulted in discovery of drugs).

### CONCLUSION

For the reasons set forth above, the defendants' motions to suppress evidence from the February 24, 2008, search of 724 Riverside and defendant Khajavi's car, as well the March 30 and December 18, 2008, searches relating to defendant Buddenberg should be denied.


Dated: May 21, 2010                           Respectfully submitted,

                                              JOSEPH P. RUSSONIELLO
                                              UNITED STATES ATTORNEY

                                                    /s/
                                              _____
                                              Elise Becker
                                              Grant Fondo
                                              Assistant United States Attorneys