Thomas J. Nolan (SBN 48413)
Emma Bradford (SBN 233256)
Nolan, Armstrong & Barton LLP
600 University Ave.
Palo Alto, Ca. 94301
Tel.  (650) 326-2980  Fax (650) 326-9704

Counsel for Defendant Adriana Stumpo

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES,<br><br>    Plaintiff,<br><br>  v.<br><br>ADRIANA STUMPO<br><br>    Defendant | Case No. CR 09-263 RMW<br><br>**REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT STUMPO'S REQUEST FOR DETERMINATION ON SCOPE OF RELEVANT EVIDENCE AT TRIAL AND PROPOSED JURY INSTRUCTIONS**<br><br>Date:  June 7, 2010<br>Time: 9:00 a.m.<br>Court:  Ctrm 6, 4th Floor, Hon. R. M. Whyte |

## I.      THE SUBJECTIVE INTENT OF THE DEFENDANTS IS RELEVANT AND ADMISSIBLE AT TRIAL

The government first agrees that it is required to prove that Stumpo and her co-defendants subjectively intended to place the alleged victims in reasonable fear of death or serious bodily injury, but that this subjective intent is required only as to the "threats" and "intimidation" language of 18 U.S.C. section 43, and not to the remainder of the alleged course of conduct including "acts of vandalism, property damage, criminal trespass, harassment."  But the government then states:

> Moreover, the government's agreement that it must prove a "true threat" when it seeks to show a "threat" or "intimidation" adds little or nothing to the government's burden of proof or the evidence that is relevant at trial, because the statute requires the government to show that the defendants "intentionally place[d] a person in reasonable fear of the death of, or serious bodily injury to that person, a member of the immediate family … of that person, or a spouse or intimate partner of that person" by a "course of conduct" that may involve threats or intimidation.  In other words, to prove a violation of the statute the government must introduce evidence of defendants' subjective intent to place a person in reasonable fear of death or serious bodily injury.

*Govt. Response 3-4*

It appears that the government is conceding that in order to prove the defendants' guilt, it must prove at trial that the defendants' specifically intended that their alleged course of conduct (that is whatever speech, expressive conduct or acts the government alleges made up the course of conduct) would place a person in reasonable fear of death, or serious bodily injury to that person or their immediate family.

As to the government's comments regarding how that specific intent may be proven or negated, defendant Stumpo agrees that the evidence offered from all parties must be admissible under the Federal Rules of Evidence and questions of admissibility and how each party will attempt to prove or disprove intent will obviously be decided in due course.

///

///

## II.   IF THIS COURT ALLOWS TESTIMONY REGARDING WITNESS' FEAR, THE COURT MUST STRICTLY CURTAIL THE EVIDENCE THAT MAY BE ADMISSIBLE TO PROVE THE FEAR WAS REASONABLE.

The government argues that it is required under section 43 to prove that the alleged victims actually were in fear of death or serious bodily injury, and that the fear was reasonable under an objective standard.  The language of 18 U.S.C. section 43 requires the jury to determine whether the defendants believed that *a reasonable person* would have been placed in fear of death or great bodily injury as a result of *their* course of conduct.  Should the Court determine that the government is required to prove that a person was actually placed in fear, the question becomes whether the witnesses may, and to what extent they may, testify about why they were afraid.

The government argues that rather than the trial becoming a "morass of evidence about what was communicated to the witness, under what circumstances it was communicated, and by what entity it was communicated," the witnesses will simply be asked to testify about whether they were in fear and why."  *Govt. Response at 6.*  The government appears to forget about that very effective trial weapon wielded by defense attorneys and prosecutors alike: cross-examination.  The problem in this context will be the extent of the testimony.  Will the witness be allowed to testify about actions and statements, etc., that they had heard about or witnessed, but which are not attributable to the defendants? Will the witnesses be allowed to testify about the  conduct of individuals connected to the animal rights movement in general?

For example, the government has provided discovery in this case regarding  two alleged arsons which occurred in Santa Cruz.  It is unknown whether those arsons were connected to the animal rights movement.  Will the jury be allowed to hear evidence regarding those incidents because, arguably, they may be relevant to the jury's determination of whether the witness' fear was reasonable?

The government has provided defendants with discovery regarding threatening emails that some witnesses received.  There is no evidence that any of the defendants sent those emails,

1  nor is there any evidence that they knew of, or were in any way connected to those emails.  As

2  such, the witnesses may have been placed in fear not simply by the defendants' alleged course of

3  conduct but rather based upon the alleged conduct of other individuals who may or may not be

4  connected to the broad, varied and non-homogeneous community of individuals, groups and

5  ideologies which make up what is referred to as the animal rights movement.

6        As such, under the government's theory any number of alleged actions by the animal

7  rights movement in general which were known to the witness may become relevant and

8  admissible at trial.  Defendant Stumpo therefore requests that this Court make a determination as

9  to the scope of relevant evidence in this area.

### III.   *STRICTISSIMI JURIS* APPLIES AT TRIAL AND THE JURY MUST BE SO INSTRUCTED.

12        The government first argues that because the concept of *strictissimi juris* applies only to

13  First Amendment activity and because the government asserts that the defendants' conviction

14  (apparently a foregone conclusion) will not rest on activity protected by the First Amendment,

15  resort to *strictissimi juris* is unnecessary.  *Govt. Response at 7.*  This statement is in fact the

16  question.

17        The government has alleged in its bill of particulars that on each of the eight dates

18  specified, one or more of the defendants engaged in speech, and other conduct, which the

19  government alleges, constituted either threats or intimidation which, *according to the*

20  *government*, lay outside First Amendment protection.  *Govt. Bill of Particulars* at 2-3.  But it will

21  be the *jury* who will be required to determine whether the defendants' alleged course of conduct,

22  including speech and expressive conduct was not First Amendment protected speech or

23  expressive conduct.  Specifically, the *jury* will be required to determine whether defendant

24  Stumpo had the intent only to exercise her First Amendment rights and not the intent to cause a

25  person to reasonably fear death or great bodily injury.  The *jury* will be required to determine

26  whether a reasonable person would have interpreted Stumpo's speech and/or conduct as a "true

27  threat."  *United States v. Francis*, 164 F.3d 120, 123 n.4 (2d Cir. 1999).  And the *jury* will be

28  required to determine whether Ms. Stumpo may be held liable for her co-defendant's speech, acts

or expressive conduct under the conspiracy charge in the indictment.  Defendant Stumpo does

not disagree that the government may seek to prove her own specific intent by circumstantial

evidence, but citing exactly the same language as the government:

> When the alleged [conspiratorial] agreement is both bifarious and political within the shadow of the First Amendment, an individual's specific intent to adhere to the illegal portions of the agreement may be shown in one of three ways: by the ***individual defendant's*** prior or subsequent unambiguous statements; by the ***individual defendant's*** subsequent commission of the very illegal act contemplated by the agreement; or by the ***individual defendant's*** subsequent legal act if that act is "clearly undertaken for the specific purpose of rendering effective the later illegal activity which is advocated."

*United States v. Spock*, 416 F.2d 165, 173 (1st Cir. 1969) (emphasis added).

And as the government has previously argued: "Until the government presents its

evidence at trial, the court and jury will not have all the evidence necessary to determine whether

defendants' otherwise protected conduct is outside the protection of the First Amendment

because it constitutes a 'true threat.'"  *Govt. Opp. To Motion to Dismiss and Bill of Particulars* at

9-10.  That is, the government concedes that it is the jury who must decide this question.  The

"factual issue" as to defendant Stumpo's "intent must be judged *strictissimi juris*."  *United States*

*v. Dellinger*, 472 F.2d 340, 392 (7th Cir. 1972.)  That is – it is a *factual* question for the jury to

answer.  Further, as the government acknowledges, in *Fullmer*, the prosecution under the Animal

Enterprise Protection Act, the former version of 18 U.S.C. section 43, the Third Circuit applied

the concept of *strictissmi juris*.  *United States v. Fuller*, 584 F.3d 132, 160 (3d Cir. 2009).  The

question of whether the expressive conduct and speech here is protected under the First

Amendment will be a question for the jury, and thus, *strictissimi juris* must apply.

This case is precisely the genre of criminal prosecution where *strictissimi juris* is

relevant.  Here, there exists the situation that the "animal rights community" may be seen to have

both legal and illegal ends.  There exists a broad spectrum of persons who champion the cause of

animal rights, from organizations including the American Society for the Prevention of Cruelty

to Animals, to People for the Ethical Treatment of Animals, to the Animal Liberation Front.  See,

Diana L. Beers, *For the Prevention of Cruelty; the History and Legacy of Animal Rights*

*Activism in the United States* (Swallow Press) (2006).  That spectrum includes individuals who seek to achieve the goal of animal rights both by legal and illegal means.

Within the constantly changing groups of persons present at many of the dates indicated in the Bill of Particulars, may be persons who seek to achieve the goal of animal rights by legal means or illegal means.  "When the ultimate objective of a group, of which the defendant is a member, is legal, but the means chosen to accomplish that end involve both legal and illegal activities, a court will apply *strictissimi juris* to ensure that the defendant was personally involved with the illegal aspects of the group activity." *Montour,* supra, 944 F.2d at 1024; *United States v. Markiewicz,* 978 F.2d 786, 813 (2d Cir.1992)

Where an alleged agreement has multiple objectives and where some of those objectives involve the lawful exercise of constitutionally protected expression, an individual defendant's specific intent to commit an unlawful act cannot be inferred merely from the overt acts, legal or otherwise, of her alleged coconspirators. *Spock*, supra, 416 F.2d at 173.  Under the doctrine of *strictissimi juris*, therefore, if the scope of Ms. Stumpo's agreement with her alleged indicted and unindicted co-conspirators included the lawful exercise of constitutionally protected expression, then any overt acts taken by her alleged indicted and unindicted coconspirators towards the advancement of their illegal ends cannot, on their own, be used as evidence of her specific intent to further any criminal objective.

If defendant Stumpo was party to an agreement to effect a lawful outcome through constitutionally protected expression, and personally engaged only in lawful means to bring that lawful outcome about, she cannot have the specific intent requisite for conspiracy solely on the basis of the unlawful activities of her co-defendants.  *Spock, supra,* 416 F.2d at 173.  When an alleged agreement has multiple objectives and where some of those objectives involve the lawful exercise of constitutionally protected expression, an individual defendant's specific intent to commit an unlawful act cannot be inferred merely from the overt acts, legal or otherwise, of her alleged coconspirators. *Spock*, *supra,* 416 F.2d at 173.

As the Supreme Court pointed out in *Noto v. United States*, 367 U.S.  290, 299-300 (1961), an organization has both legal and illegal ends, "[c]riminal intent … must be judged

1    *strictissimi juris*, for otherwise there is a danger that one in sympathy with the legitimate aims of

2    such an organization, but not specifically intending to accomplish them by resort to violence,

3    might be punished by adherence to lawful and constitutionally protected purposes, because of

4    other and unprotected purposes which he does not necessarily share."

5         The government then argues that "when the principle of *strictissimi juris* applies, it

6    provides a means for a court reviewing a conviction to view the evidence against a defendant,

7    not a principle on which the jury must be instructed at trial." *Govt. Response* at 7. The

8    government cites no authority for the proposition. If *strictissimi juris* applies here, then the jury

9    must be so instructed. The government further argues that the Ninth Circuit Model Jury

10   Instructions for conspiracy fully capture the doctrine of *strictissimi juris*. *Govt. Response* at 9.

11   However, the law is clear that "[t]he metastatic rules of ordinary conspiracy are ***at direct***

12   ***variance*** with the principle of strictissimi juris. *Spock*, supra, 416 F.2d at 173 (emphasis added).

13        Further, the doctrine of *strictissimi juris* is one which seldom comes into play in the

14   criminal context, because for the vast majority of conspiracy charges, there is no question as to

15   the illegal ends of the conspiracy. See, *Scales v. United States*, 367 U.S. 203, 232, (1961),

16   ("Smith Act offenses involving as they do subtler elements than are present in most other crimes,

17   call for strict standards in assessing the adequacy of the proof needed to make out a case of

18   illegal advocacy"). As such, there is seldom a factual scenario whereby codefendants are

19   indicted in a situation where the objective of their organization comprises both legal and illegal

20   means to achieve an end. The Ninth Circuit Model Jury Instructions simply do not cover such a

21   situation.

22        The doctrine of *strictissmi juris* applies to this case, it applies at trial and the jury must be

23   instructed so.

24   ///

25   ///

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Nolan, Armstrong & Barton, LLP

Dated: May 28, 2010

/s/
_____
Thomas J. Nolan
Emma Bradford
Attorneys for Defendant, Adriana Stumpo